UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,

-against-

SONJA ANTICEVIC; DAVID PAJCIN; EUGENE PLOTKIN; STANISLAV SHPIGELMAN; NIKOLAUS SHUSTER; JUAN C. RENTERIA, JR.; HENRY SIEGEL; ELVIS SANTANA; MONIKA VUJOVIC; MIKHAIL PLOTKIN; PERICA LOPANDIC; BRUNO VERINAC; ZORAN SORMAZ; ILIJA BORAC; ANTUN DILBER; ANTO KRSIC; and JASON C. SMITH,
Defendants.
--------------------------------------x

05 CV 6991 (KMW)
OPINION & ORDER

WOOD, U.S.D.J.:

Plaintiff Securities and Exchange Commission ("Plaintiff") brings this action against various defendants, who are alleged to have engaged in insider trading in violation of United States securities laws.

Plaintiff alleges that it has been unable to serve defendant Bruno Verinac ("Verinac"), and moves, pursuant to Federal Rule of Civil Procedure 4(f)(3),[1] for an order directing Plaintiff to serve Verinac by publication.

For the reasons stated below, the Court GRANTS Plaintiff's motion for service by publication.

I. Background

[1] Plaintiff does not indicate which section of Rule 4(f) governs its motion; however, the only section requiring a court order is section (3). Accordingly, the Court construes Plaintiff's motion as brought pursuant to Rule 4(f)(3).

The following facts are culled from the Plaintiff's Fourth Amended Complaint (D.E. 91) ("Complaint"), Plaintiff's Memorandum of Law in Support of Motion for an Order Directing Service by Publication Upon Defendant Verinac Pursuant to Rule 4(f) of the Federal Rules of Civil Procedure (D.E. 137) ("Supporting Memo"), and the Declaration of Scott L. Black in Support of Motion for an Order Directing Service by Publication Upon Defendant Verinac Pursuant to Rule 4(f) of the Federal Rules of Civil Procedure (D.E. 138) ("Black Declaration"). Because Verinac has not been served, he has neither filed an answer nor responded to Plaintiff's motion. Accordingly, the following facts are currently uncontested.

Plaintiff's Complaint charges seventeen defendants with participation in various related insider trading schemes. Verinac is alleged to have been both a tipper and a tippee involved in the trading of material non-public information acquired from Merrill Lynch and from Business Week magazine. (Supp. Mem. 2.)

In the more than two years that have passed since the filing of the operative Complaint, Plaintiff has been unable to effectuate service on Verinac. Plaintiff claims that it has twice attempted to serve Verinac, pursuant to Rule 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the

"Convention"), but that both of these efforts have failed.

A. Attempted Service in Germany Pursuant to the Convention

Plaintiff first obtained an address for Verinac from records for an Austrian brokerage account through which certain securities at issue in this case were allegedly traded. The account was held in the name of Verinac's uncle, defendant Antun Dilber ("Dilber"), and Verinac was a co-signatory. Verinac's application for the account listed his address as Everlingweg 10, 22119 Hamburg, Germany ("Everlingweg address"). (Supp. Mem. 2; Black Decl. Ex. A.)

In September 2006, Plaintiff attempted to serve Verinac at the Everlingweg address in accordance with the Convention. Plaintiff sent two copies of the Summons and Complaint, one in English and one translated into German, to the Central Authority, designated by Germany for the receipt of such documents. In October 2006, Plaintiff received a Certificate from German authorities, dated October 16, 2006, stating that the documents had been delivered to Verinac.[2] (Supp. Mem. 2; Black Decl. Ex. B.)

Soon thereafter, Plaintiff received a letter from the Chief Judge of the Hamburg District Court, dated October 30, 2006,

[2] Germany's Central Authority apparently did not send these materials to Verinac at the Everlingweg address on Verinac's account application, but to a different German address: Horner Stieg, 6, 22111, Hamburg, care of "Krsic." (Black Decl. Ex. B.)

indicating that the materials the German Central Authority sent to Verinac had been delivered to their Court in a closed envelope with a note stating "address unknown." (Supp. Mem. 3; Black Decl. Ex. C.) Plaintiff therefore believes that Verinac was not served in accordance with the Convention in Germany.

B. Verinac's Actual Knowledge of the Instant Case

In a separate set of events, Plaintiff received a letter, postmarked September 15, 2006, from defendant Dilber denying responsibility for the allegations made in the Complaint. A statement purportedly from Verinac was attached to Dilber's letter. In the statement, Verinac asserts that he alone was responsible for transactions involving the brokerage account held in Dilber's name, and that "therefore any charging of my uncle is complete nonsense." Verinac's address was listed at the top of this statement as Monfiorenzo 63 52210 Rovinj ("Monfiorenzo address"), in Croatia. (Supp. Mem. 3-4; Black Decl. Ex. E.)

C. Attempted Service in Croatia Pursuant to the Convention

Following receipt of Dilber's letter and the failure of attempted service in Germany, Plaintiff attempted to serve Verinac in Croatia in accordance with the Convention. In February 2007, Plaintiff forwarded a copy of the Summons and Complaint to the Croatian Central Authority. (Supp. Mem. 4.)

This attempt at service was also ultimately unsuccessful. Plaintiff received a letter from the Croatian Ministry of

Justice, dated November 2007, indicating that they were unable to deliver the materials to Verinac at the Monfiorenzo address, and that neighbors near that address suggested that Verinac was in Hamburg, Germany. (Supp. Mem. 4; Black Decl. Ex. F.) Plaintiff therefore believes that Verinac was not served in accordance with the Convention in Croatia.

Plaintiff now alleges that Verinac's address is unknown, and accordingly asks this Court to order that Plaintiff serve him by publication. Plaintiff proposes that it publish the summons and a notice to Verinac, along with a brief statement of the nature of the case and the relief sought, once weekly for four consecutive weeks, in the International Herald Tribune, Die Welt (a German publication), and either Jutarnji list or Vecernji list (two Croatian publications).

II. Analysis

Rule 4(f) governs service of process upon individuals in foreign countries and provides three means of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by [certain specified means outlined in the Rule] reasonably calculated to give notice . . . ; or
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).

Plaintiff moves the Court, pursuant to Rule 4(f)(3), for an order directing service on Verinac by publication. Plaintiff argues that because Verinac's address is unknown, service by publication is an appropriate means of effecting service. The Court agrees.

A. Rule 4(f)(3)

Pursuant to Rule 4(f)(3), a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement, Fed. R. Civ. P. 4(f)(3); and (2) comports with constitutional notions of due process, U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., No. 07 C 3598, 2008 WL 4299771, at *4 (N.D. Ill. Sept. 17, 2008).

A court is "afforded wide discretion in ordering service of process under Rule 4(f)(3)." BP Prods. N. Am., Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006) (internal quotations and citation omitted). The Rule "provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." Id.

A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3). See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002) ("Rule 4(f)(3) is

not . . . in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. . . . [N]o language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means."). A district court may nonetheless require parties "to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary . . . ." Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd., No. 03 Civ. 8554, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005) (internal quotations and citation omitted).

In the instant case, the Court finds that service by publication fulfills the two requirements of Rule 4(f)(3), and also finds that discretionary considerations weigh in favor of permitting Plaintiff to effectuate service on Verinac by publication.

1. International Agreement

A court may not order a means of service, pursuant to Rule 4(f)(3), that is prohibited by international agreement. The Court notes that there may be difficulty in ascertaining whether a particular means of service is prohibited by international agreement in situations where a defendant's location is unknown. See U.S. Commodity Futures Trading Comm'n, 2008 WL 4299771 at *4.

In the case at hand, however, Verinac's address is not entirely unknown. All evidence before the Court suggests that Verinac is in either Germany or Croatia. The Court therefore analyzes this requirement, assuming arguendo, that Verinac is in either Germany or Croatia.

Neither Germany nor Croatia explicitly objects to service by publication in their Declarations pursuant to the Convention. See CONV. ON THE SERV. ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCS. IN CIVIL OR COMM'L MATTERS, available at http://www.hcch.net/index_en.php. The Court is aware of no other international agreement to which Germany or Croatia is a party that prohibits service by publication. Accordingly, the Court finds that service by publication in this case is not prohibited by international agreement.

2. Due Process

Constitutional notions of due process require that any means of service be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

The Second Circuit has held that service by publication can satisfy the Mullane standard, so long as a plaintiff reasonably calculates that the published notice is likely to come to the defendant's attention. See SEC v. Tome, 833 F.2d 1086, 1093 (2d

Cir. 1987). Tome also indicates that service by publication may be more likely to satisfy the Mullane standard in situations where the defendant already has actual knowledge of the suit. See also Smith v. Islamic Emirate of Afg., 01 Civ 10144, 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001) (finding that the likelihood that Bin Laden was aware that suits would be filed against him weighed in favor of permitting service by publication).

Here, as in Tome, Plaintiff has reasonably calculated that publication of service in the three proposed newspapers will apprise Verinac of the pendency of this action. Plaintiff states that the selected German and Croatian publications are widely circulated in their respective countries. Similarly, the International Herald Tribune has a broad audience, and is "likely to be read by international investors." Tome, 833 F.2d at 1093. Furthermore, Plaintiff has submitted evidence that Verinac may already have actual knowledge of this case. While actual knowledge is no substitute for service, Verinac's actual knowledge may increase the likelihood that published service will ultimately come to his attention, at minimum, through his increased awareness of and attentiveness to any information about the lawsuit. Accordingly, the Court concludes that service by publication, under these circumstances, is reasonably calculated to apprise Verinac of the pendency of this action.

3. Discretionary Factors

Finally, the Court also considers the extent to which Plaintiff has shown good faith efforts to serve Verinac pursuant to more traditionally reliable means of service, such that court intervention is now warranted.

Here, Plaintiff has twice attempted, and twice failed, to serve Verinac in two different countries in accordance with the Convention. Plaintiff does not know Verinac's current address, which renders most traditional means of service unavailable. The Court, in its discretion, concludes that these factors weigh in favor of the appropriateness of service by publication.

B. Rules for Effectuating Publication of Service

Although a court is permitted to order service by publication pursuant to the Federal Rules of Civil Procedure, these rules provide no guidance as to how that publication should be effectuated or what content the publication should contain. In light of this gap, Plaintiff proposes that publication be governed by the applicable New York state law.

Federal courts may use forum state law to govern how service by publication is effectuated. See BP Prods. N. Am., Inc., 236 F.R.D. at 273 (ordering Plaintiff to serve process by publication in accordance with the dictates of forum state law). The Court agrees that forum state law should govern in the instant case.

Rule 316 of New York Civil Practice Law and Rules provides

that an order for service by publication shall:

> direct that the summons be published together with the notice to the defendant, a brief statement of the nature of the action and the relief sought, and . . . the sum of money for which judgment may be taken in case of default . . . in two newspapers, at least one in the English language, designated in the order as most likely to give notice to the person to be served, for a specified time, at least once in each of four successive weeks . . . .

Rule 316 also provides the following timing requirements: (1) the first publication of the summons must occur within thirty days of the date of the order granting service by publication; and (2) service by publication is complete on the twenty-eighth day after the day of first publication. The Court adopts all applicable elements of Rule 316.

III. Conclusion

For the reasons stated above, the Court GRANTS Plaintiff's motion to serve Verinac by publication (D.E. 136). The Court orders Plaintiff to publish the summons and a notice to Verinac, along with a brief statement of the nature of the case, the relief sought, and the sum of money for which judgment may be taken in case of default,[3] at least once weekly for four

---

[3] Plaintiff requests that it be exempted from the requirement, pursuant to Rule 316, that it publish "the sum of money for which judgment may be taken in case of default." Plaintiff offers no case law in support of its request, but argues that the "complexity of calculating the exact amount of disgorgement and penalties for which Verinac may be liable" is sufficient reason. (Supp. Mem. 7.)

The Court denies Plaintiff's request to be exempted from

this requirement. Publishing the sum a defendant might be expected to pay upon default is an important aspect of publication by service, as it impresses upon the defendant the importance of responding. The "complexity" of calculating this amount is insufficient reason for an exemption.

consecutive weeks, in the International Herald Tribune, Die Welt, and either Jutarnji list or Vecernji list. The first publication shall occur within thirty days of the date of this order. Service will be deemed complete on the twenty-eighth day after the day of first publication.

SO ORDERED.

DATED: New York, New York
~~January~~ February 8, 2009

Kimba M. Wood

KIMBA M. WOOD
United States District Judge

---

this requirement. Publishing the sum a defendant might be expected to pay upon default is an important aspect of publication by service, as it impresses upon the defendant the importance of responding. The "complexity" of calculating this amount is insufficient reason for an exemption.