**Scott L. Black**
**Senior Trial Counsel**
**Attorney for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**3 World Financial Center, Room 4300**
**New York, New York 10281**
**(212) 336-0029**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | **05 Civ. 6991 (KMW)** |
| **Plaintiff,** : | |
| : | |
| -against- : | |
| : | |
| **SONJA ANTICEVIC, DAVID PAJCIN, EUGENE** : | |
| **PLOTKIN, STANISLAV SHPIGELMAN,** : | |
| **NICKOLAUS SHUSTER, JUAN C. RENTERIA, JR.,** : | |
| **HENRY SIEGEL, ELVIS SANTANA, MONIKA** : | |
| **VUJOVIC, MIKHAIL PLOTKIN, PERICA** : | |
| **LOPANDIC, BRUNO VERINAC, ZORAN SORMAZ,** : | |
| **ILIJA BORAC, ANTUN DILBER, ANTO KRSIC,** : | |
| **and JASON C. SMITH,** : | |
| : | |
| **Defendants.** : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A**
**DEFAULT JUDGMENT AGAINST SONJA ANTICEVIC PURSUANT TO RULE 55(b),**
**OR, IN THE ALTERNATIVE, 37(d) OF THE FEDERAL RULES OF CIVIL**
**PROCEDURE**

**TABLE OF CONTENTS**

BACKGROUND……………………………………………………………………….1

FACTS PERTINENT TO THE INSTANT APPLICATION...........................................2

ARGUMENT

I.      THE COURT SHOULD ISSUE A DEFAULT JUDGMENT AGAINST
        ANTICEVIC PURSUANT TO FRCP 55(b)…………………………………...4

II.     IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A DEFAULT
        JUDGMENT AGAINST ANTICEVIC PURSUANT TO FRCP 37(d)…………..5

III.    THE COURT SHOULD GRANT THE COMMISSION'S REQUESTS FOR
        INJUNCTIVE AND MONETARY RELIEF……………………………………..7

        A.      THE COURT SHOULD PERMANENTLY ENJOIN ANTICEVIC
                FROM FUTURE VIOLATIONS OF THE SECURITIES LAWS……….7

        B.      THE COURT SHOULD ORDER ANTICEVIC TO PAY
                DISGORGEMENT……………………………………………………11

        C.      THE COURT SHOULD ORDER ANTICEVIC TO PAY
                PREJUDGMENT INTEREST………………………………………...12

        D.      THE COURT SHOULD ORDER ANTICEVIC TO PAY CIVIL
                PENALTIES………………………………………………………..13

CONCLUSION………………………………………………………………………14

Plaintiff Securities and Exchange Commission (the "Commission") submits this Memorandum in support of its motion for a default judgment against defendant Sonja Anticevic. The Commission brings this motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure ("FRCP"), based upon Anticevic's failure to answer the operative Fourth Amended Complaint ("Complaint"), which the Commission filed two and a half years ago. In the alternative, the Commission seeks the entry of a default judgment pursuant to FRCP 37(d) as a sanction against Anticevic for failing to appear at her deposition, which the Commission had duly noticed for January 5, 2009. The Commission respectfully submits that such a sanction is appropriate, because, Anticevic's failure to appear at the deposition, combined with her failure to answer the Complaint and her failure to respond to her attorney's repeated attempts to contact her, all point to the conclusion that Anticevic is now simply ignoring the proceedings in this Court against her. As part of such default judgment, the Commission also seeks the entry of an order directing Anticevic to pay disgorgement, prejudgment interest and penalties.

## BACKGROUND

This case was originally brought in 2005 as an emergency action, seeking expedited relief stemming from insider trading in the securities of, among other entities, Reebok International Ltd. The Complaint charges seventeen defendants for their collective participation in three separate insider trading schemes orchestrated by defendants Eugene Plotkin and David Pajcin, based upon trading in material non-public information stemming from Merrill Lynch (the "Merrill Lynch Scheme"), Business Week magazine (the "Business Week Scheme") and grand jury proceedings in New Jersey concerning Bristol-Myers Squibb Co. (collectively, the "Schemes").

The Complaint alleges that during the period of time referenced therein, Anticevic held

two brokerage accounts in her name through which various securities relating to all three

Schemes were traded: (i) an account at CyberTrader, Inc. ("CyberTrader"), account number

19660984 (the "Anticevic CyberTrader Account"); and (ii) an account at Saxo Bank A/S ("Saxo

Bank"), a bank located in Copenhagen, Denmark, account number 66855INET (the "Anticevic

Saxo Bank Account") (collectively, the "Anticevic Accounts"). (Complaint, ¶ 9.) The

Complaint further alleges that Anticevic gave Pajcin permission to execute trades through the

Anticevic Accounts, that Pajcin repeatedly did so, primarily to avoid detection, and that Pajcin

promised Anticevic proceeds from his trading in exchange for use of the Anticevic Accounts.

(*Id.* ¶¶ 9, 43, 44, 45, 46, 61, 62, 72, 75, 78.) As a result, the Complaint charges Anticevic with

violation of Section 10(b) of the Securities Exchange Act ("Exchange Act") of 1934 and Rule

10b-5 thereunder and Section 17(a) of the Securities Act of 1933 ("Securities Act") (*Id.* ¶¶ 88,

91. 135-149, 150-164, 165-179, 193-215, 216-227).

## FACTS PERTINENT TO THE INSTANT APPLICATION

Anticevic was the first and only defendant named in the original complaint initiating this

action, filed on August 5, 2005. On that same day, a Summons was issued to Anticevic.

(Declaration of Scott L. Black in Support of Motion for a Default Judgment Against Sonja

Anticevic Pursuant to Rule 55(b), or, in the Alternative, 37(d) of the Federal Rules of Civil

Procedure ("Black Dec."), ¶ 4.) On August 8, 2005 the Commission filed an Affidavit of

Service, establishing service of the Summons on Anticevic in accordance with the procedures set

forth in an Order to Show Cause entered by the Court on August 5, 2005. (*Id.*, ¶ 5; Docket Entry

("DE") 4.) On August 30, 2006 the Commission filed the Complaint, which names a total of 17

defendants. (*Id.*, ¶ 6; DE 91.) On September 1, 2006 the Commission filed a Certificate of

Service, establishing service of the Complaint upon Anticevic by service on her counsel, Jonathan Kaye, pursuant to her counsel's agreement to accept service on her behalf. (*Id.*, ¶ 7; DE 92.) On March 11, 2009 the Commission filed an Acknowledgment of Service by Jonathan Kaye dated September 7, 2006. (*Id.*, ¶ 8; DE 142.) To date, Anticevic has not answered the Complaint. (*Id.*, ¶ 8.) Accordingly, a Certificate of Default was issued by the Clerk of Court on March 11, 2009. (*Id.*, ¶ 9, Exhibit ("Ex.") A.)

Despite the fact that Anticevic had not answered the Complaint, following the Court's lifting of a stay on discovery stemming from related parallel criminal proceedings, on December 8, 2008 the Commission noticed Anticevic's deposition to take place at its offices on January 5, 2009 (the "Notice"). (Black Dec., ¶ 14, Ex. D.)) The Commission served the discovery notice on Anticevic's counsel, Jonathan Kaye, as required by FRCP 5(b), and subsequently received confirmation that Mr. Kaye received the notice the next day. (*Id.* ¶¶ 14-15, Ex. E.) During the period between December 9, 2008 and January 5, 2009, the Commission staff had communications with Mr. Kaye in which Mr. Kaye acknowledged receipt of the Notice, and in which we discussed the Anticevic deposition. During these discussions, Mr. Kaye indicated that he had made repeated efforts to contact his client, who resides in Croatia, including written communication that he had sent to her in Croatian, but that he had not received any response. Mr. Kaye further indicated that he did not believe Ms. Anticevic would appear for her deposition on January 5, 2009. (*Id.* ¶ 16.) Anticevic ultimately failed to appear for her deposition on January 5, 2009. (*Id.* ¶ 17, Ex. F.)

The Commission's request for Anticevic's testimony was necessitated in part by the fact that, although Anticevic had purportedly made previous public denials that she knew anything

about securities trading,[1] the Commission had not had the opportunity to question Anticevic

under oath in order to determine the full extent of her involvement in the insider trading

schemes.  Furthermore, although in 2005 Anticevic filed an answer (D.E. 61) (the "Answer") to

the Commission's First Amended Complaint (D.E. 22), she did not file any response to any of

the interim subsequent amended complaints, and, as noted above, has never answered the

operative Complaint, all of which set forth the details of the three Schemes in far greater detail

than was set forth in the First Amended Complaint.  Adding to the confusion is the fact that the

Answer is inconsistent with her public denials of having knowledge of any trades, as it admits

knowledge of the trades in her account.  *See, e.g.,* Answer, ¶ 35.  In any event, the Answer fails

to provide any useful information concerning her role in the Schemes at issue, as it appears to be

a near identical copy of Pajcin's answer to the same pleading.  *Compare* D.E. 61 (Anticevic

Answer) *with* D.E. 60 (Pajcin Answer).[2]  Accordingly, by failing to appear for her deposition,

Anticevic has prevented the Commission from obtaining additional information necessary to

prosecute its case.  Furthermore, based upon her failure to answer the most recent pleadings,

along with her repeated failure to respond to her attorney, it appears that Anticevic will not

provide any discovery and is simply ignoring this proceeding altogether.

## ARGUMENT

**I.     THE COURT SHOULD ISSUE A DEFAULT JUDGMENT AGAINST
ANTICEVIC PURSUANT TO FRCP 55(b)**

The entry of a default judgment under FRCP 55(b) is left to the "sound judicial

discretion" of the court.  *See* 10 Wright, Miller & Kane, Federal Practice & Procedure § 2685 (3d

---

[1]     *See, e.g.*, "Account Used for Reebok Trades is Frozen," *The New York Times*,
August 6, 2005.

[2]     In fact, in the "Affirmative Defense" section of her Answer, Anticevic requests
that the Court "[e]nter judgment in **his** favor dismissing the Complaint with prejudice."

ed. 2005).  Where "a party fails to respond . . . the court is ordinarily justified in entering a

judgment against the defaulting party."  Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984).  A

default is proper where a party fails to answer an amended complaint, even where she has

answered the original complaint.  Parise v. Riccelli Haulers, Inc., 672 F. Supp. 72, 74 (N.D.N.Y.

1987).  Here, Anticevic was properly served with the Summons and Complaint and has failed to

file an answer.  (Black Decl., ¶¶ 2-12, Exs. A, B.)   Accordingly, a judgment by default is

appropriate.[3]

Moreover, upon a defendant's default, the Court should accept as true all of the factual

allegations of the complaint.  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981);

Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992) (default

judgment entered on well-pleaded allegations of a complaint that established a defendant's

liability).  In failing to answer the Complaint, Anticevic has admitted all of the Complaint's

factual allegations as to liability.  The Commission must still, however, prove the amount of

disgorgement and any other damages independently.  Au Bon Pain, 653 F.2d at 65.  A discussion

of the Commission's sought monetary relief is set forth below in Section III.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A DEFAULT JUDGMENT AGAINST ANTICEVIC PURSUANT TO FRCP 37(d)

Rule 37(d) of the FRCP provides, in relevant part:

> **Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection**
>
> (1)  In General.
>
>    (A) Motion; Grounds for Sanctions.  The court where the action is pending may, on motion, order sanctions if:

---

[3]    Anticevic is not an infant, incompetent, or in the military, and, therefore, she is not protected from entry of a default judgment.  *See* Black Dec., ¶ 3; FRCP 55.

> (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition . . .
>
> (3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FRCP 37(b)(2)(A)(vi), in turn, provides that the Court may render a default judgment against a party who fails to provide discovery.[4]

There is no issue here concerning the service of notice. The Commission properly served Anticevic's counsel with the Notice pursuant to FRCP 5(b) on December 8, 2008.[5] Nor is there any issue that Anticevic failed to appear. Accordingly, the only issue is what sanctions, if any, are appropriate. The United States Court of Appeals for the Second Circuit ("Second Circuit") has recognized, that, while not the usual case, in certain situations, the entry of a default judgment based upon a failure to comply with discovery is appropriate. U.S. Freight Co. v. Penn

---

[4]   Other sanctions provided for by Rule 37(b)(2)(A) are orders: (i) directing certain facts to be designated as established for purposes of the action (subsection (i)); (ii) prohibiting a party that fails to provide discovery from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence (subsection (ii)); (iii) striking pleadings in whole or part (subsection (iii)); and (iv) dismissing the action or proceeding in whole or in part (subsection (iv)). In the event the Court decides to deny the Commission's request for a default judgment pursuant to FRCP 55(b) or 37(d), the Commission respectfully requests that it sanction Anticevic pursuant to one or more of these other provisions as it deems appropriate.

[5]   FRCP 5(b)(1) states that when a party is represented by counsel, service must be made on counsel. FRCP 5(b)(2)(C) provides for service upon counsel by mailing the material to the counsel's last known address, in which event service is complete upon mailing. Although neither Anticevic's counsel, nor Anticevic herself, has raised any objection to the method of service, the Commission incidentally notes that a domestic plaintiff pursuing claims against a foreign party may generally proceed under the FRCP, and that a foreign party seeking the application of the Hague Convention on the Taking of Evidence Abroad in Civil or Commerical Matters in lieu of the FRCP bears the burden of persuasion. Strauss v. Credit Lyonnais, S.A., 249 FRD 429, 435 (E.D.N.Y. 2008). *See generally*, Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 539-40 (1987) (noting that Hague Convention is "optional" in matters of party discovery and "does not divest the District Court of jurisdiction to order discovery [of a foreign party] under the [FRCP]").

<u>Cent. Transp. Co.</u>, 716 F.2d 954 (2d Cir. 1983).  Specifically, the <u>U.S.</u> <u>Freight Co.</u> Court noted

that such a sanction is appropriate where a party's failure to comply with discovery "imped[es]

or extend[s] court proceedings."  *Id.* at 955.  Similarly, such a sanction is appropriate in order to

"deter others who might be tempted to such conduct in the absence of such a deterrent."  <u>Atlanta</u>

<u>Shipping Corp., Inc. v. Cross & Brown Co.</u>, 113 F.R.D. 108, 112 (S.D.N.Y. 1986).

While the Commission recognizes that a single discovery violation will often not warrant

such a severe sanction, <u>U.S. Freight Co.</u>, 716 F.2d at 954, it respectfully suggests that this is not

an ordinary scenario involving a single violation.  As discussed above, Anticevic failed to answer

the operative Complaint that has now been pending for two and a half years.  She also appears to

be ignoring the repeated attempts of her counsel to contact her.  Accordingly, there is no

indication that were the Court to first issue an order directing her to appear before imposing

sanctions that the result would be any different.  On this point, the Commission notes that while

FRCP 37(a)-(b) specifically requires a court to issue an order directing compliance with

discovery relating to a failure to answer an interrogatory or an answer at a deposition before it

can issue sanctions, no such prerequisite exists with respect to a party's failure to appear at its

deposition.  In such a case, the failure to appear is itself a sufficient basis on which the Court

may issue sanctions, regardless of whether a prior order directing compliance had been made.

*See* FRCP 37(d).  Accordingly, the Commission respectfully submits that entry of a default here

is appropriate.

## III. THE COURT SHOULD GRANT THE COMMISSION'S REQUESTS FOR INJUNCTIVE AND MONETARY RELIEF

### A. THE COURT SHOULD PERMANENTLY ENJOIN ANTICEVIC FROM FUTURE VIOLATIONS OF THE SECURITIES LAWS

The Court should permanently enjoin Anticevic from future violations of Section 17(a) of

the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  Permanent

injunctions against future violations of the securities laws may be ordered as part of a judgment

by default, if a factual basis for that relief exists. SEC v. Management Dynamics, Inc., 515 F.2d

801, 814 (2d Cir. 1975). Section 20(b) of the Securities Act, 15 U.S.C. §77t(b), and Section

21(d) of the Exchange Act, 15 U.S.C. §78u(d), entitle the Commission to obtain permanent

injunctive relief upon a showing that: (1) violations of the securities laws occurred; and (2) there

is a reasonable likelihood that violations will occur in the future.[6] SEC v. Commonwealth Chem.

Sec., Inc., 574 F.2d 90 (2d Cir. 1978); SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1100-01

(2d Cir. 1972); SEC v. Softpoint, Inc., 958 F. Supp. 846, 866 (S.D.N.Y. 1997), *aff'd*, 159 F.3d

1348 (2d Cir. 1998).

*Violations of the Antifraud Provisions*

The antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and

Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.

§ 240.10b-5, prohibit the use of manipulative or deceptive devices or contrivances in the offer or

sale (Section 17(a)) or in connection with the purchase or sale (Section 10(b) and Rule 10b-5) of

securities. Basic, Inc. v. Levinson, 485 US 224, 235 n.13 (1988) (*citing* SEC v. Texas Gulf

Sulphur Co., 401 F.2d 833, 862 (2d Cir. 1968) (*en banc*)). In order to establish a violation of

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5

thereunder, the Commission must show that Anticevic, (1) acting with the requisite scienter,

(2) made material misrepresentations or omissions or engaged in a manipulative practice, such as a

scheme to defraud, (3) in connection with the purchase or sale of a security, (4) by use of an

---

[6]     Unlike private litigants, the Commission need not show risk of irreparable injury,
or the unavailability of remedies at law in a request for injunctive relief. SEC v.
Unifund SAL, 910 F.2d 1028, 1036 (2d Cir. 1990); Management Dynamics, 515 F.2d at
808-09 (stating that standards of public interest, not requirements of private litigation,
govern Commission requests for injunctive relief).

instrumentality of interstate commerce, such as the mails or wires. *See* 15 U.S.C. §§ 77q(a), 78j(b);

17 C.F.R. § 240.10b-5; SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999) (*citing*

SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1477 (2d Cir. 1996)).  Scienter need not be shown in

order to establish violations of Sections 17(a)(2) and (3) of the Securities Act.  Aaron v. SEC,

446 U.S. 680, 696-97 (1980).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."  Ernst &

Ernst v. Hochfelder, 425 US 185, 193 n.12 (1976); Basic, 485 US at 231.  Reckless conduct, "which

is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary

care . . . to the extent that the danger was either known to the defendant or so obvious that the

defendant must have been aware of it,'" satisfies the scienter requirement.  Rolf v. Blyth, Eastman

Dillon & Co., 570 F.2d 38, 46-47 (2d Cir. 1978) (*quoting* Sanders v. John Nuveen & Co., 554 F.2d

790, 793 (7th Cir. 1977)).  Information is considered material if there is a substantial likelihood that

a reasonable investor would consider such information important in making an investment decision.

Basic, 485 US at 231-232; TSC Indus., Inc. v. Northway, Inc., 426 US 438, 449 (1976).  Acts of

insider trading constitute a manipulative or deceptive device within Section 10(b) of the Exchange

Act.  In re Refco, Inc. Secs. Litig., 503 F. Supp.2d 611, 665 n. 46 (S.D.N.Y. 2007).  The

requirement that the violative activity occur in the offer or sale, or in connection with the purchase

or sale, of a security is construed broadly.  SEC v. Zandford, 535 U.S. 813 (2002).

Here, each of the elements necessary to establish a violation of Section 17(a) of the

Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder is established as a

matter of law because, on a default judgment motion, the well-pleaded allegations of the

complaint are deemed admitted as to liability.  Trans World Airlines, Inc. v. Hughes, 449 F.2d 51

(2d Cir. 1971), *rev'd on other grounds*, 409 US 363 (1973); Comdyne I, Inc. v. Corbin, 908 F.2d

1142, 1149 (3d Cir. 1990). Accordingly, the Commission has established that Anticevic violated

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.[7]

*Likelihood of Future Violations*:

In considering whether there is a reasonable likelihood that Anticevic will commit future

violations of the securities laws, the Second Circuit weighs various factors including: (1) the

egregiousness of the violation; (2) the degree of scienter involved; and (3) the isolated or

repeated nature of the violations. SEC v. Cavanagh, 155 F.3d 129, 135 (2d. Cir. 1998);

Softpoint, Inc., 958 F. Supp. at 867; Commonwealth Chem. Secs., Inc., 574 F.2d at 100-01. As a

general matter, the Second Circuit has noted that "the commission of past illegal conduct is highly

suggestive of the likelihood of future violations. . . . [F]actors suggesting that the infraction might

not have been an isolated occurrence are always relevant. . . . Moreover, appellate courts have

repeatedly cautioned that cessation of illegal activity does not ipso facto justify the denial of an

injunction." Management Dynamics, Inc., 515 F.2d at 808. Each of the factors set forth above

weighs towards injunctive relief against Anticevic.

---

[7]     Even if the Court were to conclude that the facts set forth in the Complaint do not
establish that Anticevic committed a *primary* violation of the antifraud provisions by
virtue of the fact that there are no specific allegations that she executed the trades herself,
at a minimum, the Complaint alleges facts establishing that Anticevic aided and abetted
Pajcin's primary violations of those provisions. In order to establish liability for aiding
and abetting, the Commission must show that: (1) Anticevic acted knowingly;
(2) Anticevic provided substantial assistance to Pajcin; and (3) Pajcin committed a
primary violation. SEC v. Ramoil Mgmt. Ltd., 01 Civ. 9057(SC), 2007 WL 3146943,
*11 (S.D.N.Y. Oct. 25, 2007); Exchange Act § 20(e). The Complaint pleads facts
establishing each of these requirements. Since under Section 20(e) of the Exchange Act
an individual who aids and abets another's violation is "deemed to be in violation of such
provision to the same extent as the person to whom such assistance is provided,"
injunctive relief against Anticevic is appropriate. *See* Ramoil, 2007 WL 3146943, at *12
(entering injunction based in part on aiding and abetting violations).

First, Anticevic's conduct was egregious. As discussed below, through Anticevic's

assistance, the defendants acquired over $2 million in ill-gotten gains by trading in the Anticevic

Accounts. Second, at a minimum, Anticevic acted extremely recklessly by permitting her

Accounts to be used to further Pajcin and Plotkin's illegal Schemes. Finally, Anticevic

repeatedly engaged in the fraudulent conduct by repeatedly letting Pajcin use her account.

Moreover, Anticevic's refusal to answer the allegations against her suggests that she would be

willing to engage in future violations of the securities laws. Accordingly, she should be

permanently enjoined from future violations of Section 17(a) of the Securities Act, Section 10(b)

of the Exchange Act, and Rule 10b-5 thereunder.

### B.      The Court Should Order Anticevic to Pay Disgorgment

Disgorgement is an equitable remedy for violations of the federal securities laws aimed at

"forcing a defendant to give up the amount by which he was unjustly enriched." SEC v. Tome,

833 F.2d 1086, 1096 (2d Cir. 1987) (*quoting* Commonwealth Chem. Secs., 574 F.2d at 102). In

meeting its burden for disgorgement, "[p]laintiff is not required to trace every dollar of proceeds

… nor is plaintiff required to identify misappropriated monies which have been commingled …."

SEC v. Great Lakes Equities Co., 775 F. Supp. 211, 214 n.21 (E.D. Mich. 1991), *aff'd*, 12 F.3d

214 (6th Cir. 1993). After the government makes a showing of the disgorgement figure, the

burden then shifts to the defendant who must clearly demonstrate that the disgorgement figure is

not a reasonable approximation. SEC v. First City Financial Corp., 890 F.2d 1215, 1232 (D.C.

Cir. 1989). "[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct

created that uncertainty." Id. (*citing*, *inter alia,* Elkind v. Liggett & Myers, Inc., 635 F.2d 156,

171 (2d Cir. 1980)). This principle is applicable in the context of SEC enforcement suits, where

deterrence is the key objective. Id. at 1232 n.24.

Here, a total of $2,056,055.15 in ill-gotten gains were executed through the Anticevic

Accounts in trades relating to the insider trading Schemes. (Declaration of Melissa Coppola

("Coppola Dec.") ¶¶ 3-4, Ex. A.) Substantially all of these funds remain frozen pursuant to

Court order.[8] Accordingly, an order holding Anticevic liable for disgorgement would enable the

Commission to seize these funds.

### C. The Court Should Order Anticevic to Pay Prejudgment Interest

Awarding prejudgment interest deprives defendants of the time value of their ill-gotten

gains and is a proper exercise of judicial discretion in Commission cases. SEC v. Warde, 151

F.3d 42, 50 (2d Cir. 1998); SEC v. Musella, 748 F. Supp. 1028, 1042-43 (S.D.N.Y. 1989), *aff'd*,

898 F.2d 138 (2d Cir. 1990). Ordering payment of prejudgment interest is "intended to deprive

wrongdoers of profits they illegally obtained by violating the securities laws. In other words,

requiring the payment of interest prevents a defendant from obtaining the benefit of what

amounts to an interest-free loan procured as a result of illegal activity." SEC v. Falbo, 14 F.

Supp.2d 508, 528 (S.D.N.Y. 1998). The Commission has calculated prejudgment interest of

$578,223.25 on the $2,056,055.15 of ill-gotten gains for the time period from August 3, 2005

through April 1, 2009, for a total amount of $2,634,278.40 of disgorgement and prejudgment

interest. (Coppola Dec., ¶ 5, Ex. C.)

Prejudgment interest should be calculated by applying the Internal Revenue Service tax

underpayment rate ("IRS rate"), 26 U.S.C. § 6621(a)(2), which the Commission has adopted in

connection with administrative proceedings. *See* Rule 600(b) of the Commission's Rules of

Practice, 17 C.F.R. § 201.600(b). The Second Circuit has upheld the application of the IRS rate

---

[8]     On August 19, 2005, the Court entered an Order freezing all of Anticevic's assets
including the Anticevic CyberTrader Account (D.E. 24.) According to CyberTrader, as
of March 11, 2009, the balance in that account was $1,274,040.10 in cash, and $973,812
in securities. (Black Dec. ¶ 18.)

in Commission injunctive actions.  <u>First Jersey Secs., Inc.</u>, 101 F.3d at 1476-77; *see also* <u>SEC v. Moran</u>, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  The IRS rate "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from the fraud."  <u>First Jersey</u>, 101 F.3d at 1476.

**D.      The Court Should Order Anticevic to Pay Civil Penalties**

Both the Securities Act and the Exchange Act provide for three separate "tiers" of potential penalties, which increase depending upon the seriousness of the violation.  For violations occurring after February 14, 2005 the following amounts apply:

| Tier | Penalty for Individual |
| --- | --- |
| First Tier (any violation) | Up to $6,500 or gross amount of pecuniary gain |
| Second Tier (violation involving fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement) | Up to $60,000 or gross amount of pecuniary gain |
| Third Tier (violation involving fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons) | $120,000 or gross amount of pecuniary gain |

Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); 17 C.F.R. § 201.1002, Table III to Subpart E.

The Court has great discretion in assessing civil penalties based upon the facts and circumstances of the case.  *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996).  In determining whether civil penalties are to be imposed, and the amount of such civil penalties,

13

courts consider number of factors, including (1) the egregiousness of the defendant's conduct;

(2) the degree of the defendant's scienter; (3) whether the defendant's conduct created

substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's

conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the

defendant's demonstrated current and future financial condition. *SEC v. Opulentica, LLC*, 479 F.

Supp.2d at 331; *SEC v. Coates*, 137 F. Supp.2d 413, 428-29 (S.D.N.Y. 2001).

The purpose of civil money penalties is to punish the individual violator and to deter

further violations of the federal securities laws. The Commission does not request a specific

amount of a civil money penalty. The Court, in its discretion, should set the appropriate amount.

## CONCLUSION

For the foregoing reasons, the Court should enter a default judgment against Anticevic,

permanently enjoin her from future violations of Section 10(b) of the Exchange Act and Rule

10b-5 thereunder and Section 17(a) of the Securities Act, and order her to pay disgorgement,

prejudgment interest and civil penalties. In the alternative, the Court should issue sanctions

against Anticevic for failing to appear at her deposition.

Dated: New York, New York
      March 30, 2009

s/_____
Scott L. Black
Securities and Exchange Commission
3 World Financial Center
New York, New York 10281
(212) 336-0029
blacks@sec.gov

14