UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,
                        Plaintiff,

-against-

SONJA ANTICEVIC; DAVID PAJCIN; EUGENE                     05 CV 6991 (KMW)
PLOTKIN; STANISLAV SHPIGELMAN;                                OPINION & ORDER
NIKOLAUS SHUSTER; JUAN C. RENTERIA, JR.;
HENRY SIEGEL; ELVIS SANTANA; MONIKA
VUJOVIC; MIKHAIL PLOTKIN; PERICA
LOPANDIC; BRUNO VERINAC; ZORAN
SORMAZ; ILIJA BORAC; ANTUN DILBER;
ANTO KRSIC; and JASON C. SMITH,
                        Defendants.
-------------------------------------------------------------------x
WOOD, U.S.D.J.:

      Plaintiff Securities and Exchange Commission ("SEC") brings this motion for a default judgment against Defendant Sonja Anticevic ("Anticevic"), who the SEC alleges was involved in an insider-trading scheme. In its motion, the SEC also requests that the Court award damages against Anticevic in the form of: (1) a permanent injunction enjoining Anticevic from future violations of the securities laws; (2) disgorgement of Anticevic's ill-gotten gains plus prejudgment interest; and (3) civil penalties in the amount of three times Anticevic's ill-gotten gains.

      For the reasons set forth below, the Court GRANTS the SEC's motion for a default judgment. The Court GRANTS in part and DENIES in part the SEC's request for damages.

  I.    <u>Background</u>

      This case involves three alleged insider-trading schemes (the "Schemes"), allegedly perpetrated by a group of seventeen individuals located in the United States and Croatia, including Anticevic. Anticevic is a 63 year-old retired seamstress who lives in Croatia. She is

1

the aunt of one of the ringleaders of the Schemes. The SEC alleges that Anticevic held two brokerage accounts in her name ("Accounts"), which were used to execute some of the illegal trading. (Fourth Amended Complaint, ¶ 9 [hereinafter Complaint].) The SEC alleges that Anticevic gave Defendant David Pajcin ("Pajcin") permission to execute trades through the Accounts, that Pajcin repeatedly did so, and that Pajcin promised Anticevic proceeds from his trading in exchange for use of the Accounts. (Complaint ¶¶ 9, 43, 44, 45, 46, 61, 62, 72, 75, 78.) According to the SEC's Fourth Amended Complaint, a total of $2,056,055.15 in trades were executed through the Accounts. The Fourth Amended Complaint charges Anticevic with violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, and Section 17(a) of the Securities Act of 1933 ("Securities Act"). (Complaint ¶¶ 88, 91, 135-49, 150-64, 165-79, 193-215, 216-277.)

      Anticevic was the first and only defendant named in the SEC's original complaint, which was filed on August 5, 2005 and properly served on Anticevic. Anticevic never filed an answer to the original complaint. Following the filing of the original complaint, the SEC filed three amended complaints, all of which were served properly on Anticevic. Anticevic filed an answer to the First Amended Complaint, but she did not file answers to the Second or Third Amended Complaints. On August 30, 2006, the SEC filed the Fourth Amended Complaint, which was also properly served on Anticevic.

      On December 8, 2008, the SEC noticed Anticevic's deposition to take place at its offices on January 5, 2009. The SEC properly served notice of the deposition on Anticevic's lawyer, Jonathan Kaye ("Kaye"), as required by Federal Rule of Civil Procedure 5(b). Kaye acknowledged receipt of the notice, and told the SEC that he had been unable to contact

Anticevic and did not believe that she would appear for her deposition. Anticevic did not appear for her deposition on January 5, 2009.

As of March 11, 2009, Anticevic had not answered the Fourth Amended Complaint. On that date, the Clerk of Court issued a Certificate of Default against Anticevic. On March 30, 2009, the SEC moved for a default judgment against Anticevic, pursuant to FRCP 55(b), or, in the alternative, FRCP 37(b), as a sanction for Anticevic's failure to appear at her deposition.

On April 1, 2009, Kaye filed on Anticevic's behalf an answer to the Complaint and an opposition to the SEC's motion for a default judgment. In his submissions, Kaye stated that he had been unable to locate or contact Anticevic for some time.

On June 22, 2009, in response to an order from the Court, the SEC and Kaye submitted a joint status update in which Kaye stated that he no longer intended to oppose the SEC's motion.

On July 21, 2009, the Court issued an order denying the SEC's motion for a default judgment, and directing Kaye that, by July 27, 2009, he was either (1) to file a motion to be relieved as Anticevic's counsel, or (2) to write to the Court stating that he remained Anticevic's counsel and had authority to act on her behalf. In its order, the Court further directed that if Kaye withdrew as counsel, Anticevic was to have a new attorney file a notice of appearance on her behalf by August 31, 2009. The Court stated that if no such notice of appearance was filed, the SEC could submit a renewed motion for default judgment against Anticevic, and that default could be entered against her at that point.

On July 26, 2009, Kaye submitted a motion withdrawing as Anticevic's counsel. The Court granted Kaye's motion in an order that also reaffirmed Anticevic's August 31, 2009 deadline to have a new attorney file a notice of appearance on her behalf. The SEC sent a copy

of the Court's order, translated into Croatian, to Anticevic's last-known address in Croatia. To date, no new attorney has filed a notice of appearance on behalf of Anticevic.

On September 16, 2009, the SEC filed this renewed motion for default judgment against Anticevic, pursuant to FRCP 55(b) or, in the alternative, FRCP 37(d), and requested damages.

II.     Default Judgment Pursuant to FRCP 55(b)

A default judgment is ordinarily justified where a defendant fails to respond to the complaint. Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984); see also Eastern Freight Ways, Inc. v. Eastern Motor Freight, Inc., No. 02 Civ. 3138, 2003 WL 21355486 (S.D.N.Y. Jun. 11, 2006) (granting default where plaintiff did not respond to complaint or to court order for plaintiff to have a new attorney file a notice of appearance on his behalf). Default is proper where a defendant fails to answer an amended complaint, even where the defendant has answered the original complaint. Parise v. Riccelli Haulers, Inc., 672 F. Supp. 72, 74 (N.D.N.Y. 1987).

Upon a defendant's default, the court accepts as true all factual allegations in the complaint. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992) (default judgment entered on well-pleaded allegations of a complaint that established a defendant's liability).

Here, Anticevic has not responded to the original complaint or the Second, Third, and Fourth Amended Complaints. In addition, Anticevic did not appear at her deposition, or respond to the Court's order that she have a new attorney file a notice of appearance on her behalf. Accordingly, the Court grants the SEC a default judgment against Anticevic pursuant to FRCP 55(b).[1] The Court deems true all factual allegations of the Fourth Amended Complaint alleged

---

[1] Because the Court has entered a judgment of default pursuant to FRCP 55(b), the Court does not address the SEC's argument that a default judgment pursuant to FRCP 37(b) is appropriate as a sanction for Anticevic's failure to appear at her deposition.

against Anticevic. The default judgment thus establishes Anticevic's liability for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5.

   III.   Damages

The SEC requests that the Court award three types of damages against Anticevic: (1) a permanent injunction enjoining Anticevic from future violations of the securities laws; (2) disgorgement of Anticevic's ill-gotten gains plus prejudgment interest, in the total amount of $2,634,278.40; and (3) civil penalties in the amount of three times Anticevic's ill-gotten gains, or $6,168,165.45.

On a default judgment, a court does not accept as true allegations in the complaint regarding damages. Au Bon Pain, 653 F.2d at 65. Rather, the plaintiff is required to prove independently the damages it requests. Id. A court can make a determination regarding damages on the basis of the evidence before it, including the complaints and affidavits submitted by the plaintiff, as long as the court is ensured that the evidence provides a basis for the damages granted. See Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

Here, the Court holds that the evidence provides a basis for a damages award of: (1) a permanent injunction enjoining Anticevic from future violations of the securities laws; (2) disgorgement and prejudgment interest in the total amount of $2,634,278.40; and (3) civil penalties equal to one-and-a-half times the amount of Anticevic's ill-gotten gains, or $3,084,082.73.

   A. Permanent Injunction

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), entitle the SEC to obtain permanent injunctive relief upon a

showing that: (1) violations of the securities laws occurred; and (2) there is a reasonable likelihood that violations will occur in the future. SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99-100 (2d Cir. 1978); SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1100-01 (2d Cir. 1972).

The evidence before the Court establishes that Anticevic violated the securities laws, and that there is a reasonable likelihood that she will commit future violations. Thus an award of permanent injunctive relief is appropriate.

### 1. Violations of the securities laws

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 prohibit the use of manipulative or deceptive devices or contrivances in the offer or sale of securities. Basic Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988). In order to establish a violation of these provisions, the plaintiff must show that the defendant (1) acting with the requisite scienter, (2) made material misrepresentations or omissions or engaged in a manipulative practice, such as a scheme to defraud, (3) in connection with the purchase or sale of a security, (4) by use of an instrumentality of interstate commerce. See 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5; SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999). Scienter need not be shown in order to establish violations of Sections 17(a)(2) and (3) of the Securities Act. Aaron v. SEC, 446 U.S. 680, 696-97 (1980).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). Reckless conduct, "which is 'highly unreasonable' and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," satisfies the scienter requirement. Rolf v. Blyth, Eastman Dillon &

Co., 570 F.2d 38, 46-47 (2d Cir. 1978) (internal quotations omitted).  Information is considered material if there is a substantial likelihood that a reasonable investor would consider such information important in making an investment decision.  Basic, 485 U.S. at 231-232.  Acts of insider trading constitute a manipulative or deceptive device within Section 10(b) of the Exchange Act.  In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 665 n. 46 (S.D.N.Y. 2007).  The requirement that the violative activity occur in the offer or sale, or in connection with the purchase or sale, of a security is construed broadly.  SEC v. Zandford, 535 U.S. 813, 819 (2002).

Here, the SEC's Fourth Amended Complaint sets forth facts alleging each of the elements necessary to establish that Anticevic violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  On the default judgment, the Court accepts these allegations as true.  Thus, the SEC has established that Anticevic violated the securities laws.

2. Likelihood of Future Violations

The Second Circuit weighs various factors when considering whether there is a reasonable likelihood that a defendant will commit future violations of the securities laws, including:  (1) the egregiousness of the violation; (2) the degree of scienter involved; and (3) the isolated or repeated nature of the violations.  SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998); Commonwealth Chem. Secs., Inc., 574 F.2d at 100-01.

The Court finds that there is a reasonable likelihood that Anticevic will commit future violations of the securities laws.  First, Anticevic's conduct was egregious.  With Anticevic's assistance, the defendants acquired over $2 million in ill-gotten gains by trading in the Anticevic Accounts.  Second, at a minimum Anticevic acted extremely recklessly by permitting her Accounts to be used to further the Schemes.  Finally, Anticevic repeatedly engaged in the fraudulent conduct, by repeatedly letting Pajcin use the Accounts for trading.

Accordingly, the Court grants a permanent injunction against Anticevic, enjoining her from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

    B.  <u>Disgorgement and Prejudgment Interest</u>

Disgorgement is an equitable remedy for violations of the federal securities laws, which is aimed at "forcing a defendant to give up the amount by which he was unjustly enriched." <u>SEC v. Tome</u>, 833 F.2d 1086, 1096 (2d Cir. 1987).  In meeting its burden for disgorgement, the "[p]laintiff is not required to trace every dollar of proceedings . . . nor . . . required to identify misappropriated monies which have been commingled . . . ." <u>SEC v. Great Lakes Equities Co.</u>, 775 F. Supp. 211, 214 n.22 (E.D. Mich. 1991), <u>aff'd</u>, 12 F.3d 214 (6th Cir. 1993).  After the plaintiff makes a showing of the disgorgement figure, the burden then shifts to the defendant who must clearly demonstrate that the disgorgement figure is not a reasonable approximation. <u>SEC v. First City Fin. Corp.</u>, 890 F.2d 1215, 1232 (D.C. Cir. 1989).

A court can award prejudgment interest on the amount to awarded as disgorgement, in order to deprive the defendant of the time-value of the money.  <u>SEC v. Warde</u>, 151 F.3d 42, 50 (2d Cir. 1998).  In SEC injunctive actions, prejudgment interest should be calculated by applying the Internal Revenue Service tax underpayment rate ("IRS rate"), 26 U.S.C. § 6621(a)(2).  <u>SEC v. First Jersey Secs., Inc.</u>, 101 F.3d 1450, 1476-77 (2d Cir. 1996).

The SEC seeks an award of disgorgement and prejudgment interest in the total amount of $2,634,278.40.  The SEC has submitted detailed affidavits showing that a total of $2,056,055.15 in ill-gotten gains were received from trades executed through the Anticevic Accounts.  (Decl. of Melissa Coppola ("Coppola Dec.") ¶¶ 3-4, Ex. A.)  The SEC has calculated prejudgment interest of $578,223.25 on the disgorgement amount, using the IRS Rate and for the time period from

August 3, 2005 through April 1, 2009.  The SEC's affidavits provide sufficient evidence to support the award sought, which will deprive Anticevic of her ill-gotten gains from the Schemes.  Accordingly, the Court GRANTS the SEC's request for disgorgement and prejudgment interest in the amount of $2,634,278.40.

    C.  Civil Penalities

Section 21A of the Exchange Act, 15 U.S.C. § 78u-1, provides for a court to impose a civil penalty for insider trading of up to "three times the profit gained or loss avoided" as a result of the trading.  Courts are to determine the amount of the penalty "in light of the facts and circumstances."  The civil penalty provision is designed to "go beyond disgorgement of illegal profits to add the imposition of a significant fine as a needed deterrent."  SEC v. Svoboda, 409 F. Supp. 2d 331, 347 (S.D.N.Y. 2006).  When determining the amount of the penalty, courts in this Circuit typically consider:  (1) the defendant's culpability; (2) the amounts of profit gained; (3) the repetitive nature of the unlawful act; and (4) the deterrent effect of a penalty given the defendant's net worth.  SEC v. Sekhri, 98 Civ. 2320, 2002 WL 31100823, *18 (S.D.N.Y. July 22, 2002).

The SEC argues that the Court should impose a maximum civil penalty against Anticevic, in the amount of three times her ill-gotten gains.  The Court finds that the evidence available does not support the maximum award that the SEC seeks, but rather supports a civil penalty of one-and-a-half times Anticevic's ill-gotten gains, or $3,084,082.73.

The Fourth Amended Complaint establishes Anticevic's culpability.  The facts alleged indicate that Anticevic played an important role in the Schemes by making it easier for Pajcin to hide his insider trading.  Anticevic was not, however, one of the main perpetrators of the Schemes, and she did not conduct any of the illegal trading or provide any of the insider tips.  In

addition, Anticevic was involved in only five of the ten counts of illegal trading alleged in the Complaint; other defendants were involved in all ten counts.  Therefore, while it is clear that Anticevic is culpable, her level of involvement in the Schemes does not warrant the award of the maximum civil penalty against her.  See SEC v. Opulentica, LLC, 479 F. Supp. 2d 319, 332 (S.D.N.Y. 2007) (awarding maximum civil penalty against main perpetrator of the fraud and a smaller penalty against a defendant who played a less significant role).

Anticevic's ill-gotten gains from the Schemes – $2,056,055 – were substantial, but not exceptional within the universe of insider-trading cases.  The Court does not believe it is appropriate to award a maximum penalty on the basis of less-than-exceptional ill-gotten gains.

Anticevic allowed the Accounts to be used repeatedly for illegal trading, a fact which weighs in favor of a stiff civil penalty.  The repetitive nature of the crime alone, however, does not justify a treble penalty, where other factors do not support such an award.

Finally, and most importantly, the Court has no evidence on Anticevic's net worth, and therefore cannot determine whether a treble penalty is necessary to deter her from future violations.  Given the history of this action and Anticevic's repeated failure to respond to the SEC or to the Court's orders, it is very unlikely that the Court will ever be able to obtain such information.  The evidence the Court does have shows that Anticevic is a retired seamstress living in Croatia, and that her assets have been frozen as a result of this action.  This evidence indicates that Anticevic likely is not wealthy, and therefore would be deterred by a smaller civil penalty.  See Svoboda, 409 F. Supp. at 348 (declining to award a maximum civil penalty against defendant who had a low net worth, and citing several cases taking a similar approach).

Based on the evidence presently before it, the Court believes that a civil penalty of one-and-a-half times Anticevic's ill-gotten gains would fulfill the purposes of Section 21(A) of the

Exchange Act, and deter Anticevic from committing future violations of the securities laws. Accordingly, the Court DENIES the SEC's request for a treble civil penalty, and GRANTS the SEC an award of civil penalties in the amount of one-and-a-half-times Anticevic's ill-gotten gains, or $3,084,082.73.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS the SEC's motion for a default judgment against Anticevic, pursuant to FRCP 55(b). The Court awards the SEC damages against Anticevic in the form of: (1) a permanent injunction enjoining Anticevic from future violations of the securities laws; (2) disgorgement and prejudgment interest in the amount of $2,634,278.40; and (3) civil penalties in the amount of $3,084,082.73.

SO ORDERED.

DATED:   New York, New York
         November 30, 2009

_____
KIMBA M. WOOD
United States District Judge