UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

-against-                                          05 CV 6991 (KMW)
                                                        OPINION & ORDER

SONJA ANTICEVIC; DAVID PAJCIN; EUGENE
PLOTKIN; STANISLAV SHPIGELMAN;
NIKOLAUS SHUSTER; JUAN C. RENTERIA, JR.;
HENRY SIEGEL; ELVIS SANTANA; MONIKA
VUJOVIC; MIKHAIL PLOTKIN; PERICA
LOPANDIC; BRUNO VERINAC; ZORAN
SORMAZ; ILIJA BORAC; ANTUN DILBER;
ANTO KRSIC; and JASON C. SMITH,

                        Defendants.
------------------------------------------------------------------x
WOOD, U.S.D.J.:

        Plaintiff the Securities and Exchange Commission ("SEC") moves for default judgments against Defendants Bruno Verinac ("Verinac") and Antun Dilber ("Dilber") pursuant to Rule 55(b) of the Federal Rules of Civil Procedure ("FRCP"). The SEC also moves for permanent injunctions against Verinac and Dilber, and for (1) an award of disgorgement and prejudgment interest against Verinac in the amount of $1,904,873.48; (2) an award of disgorgement and prejudgment interest against Dilber in the amount of $34,981.05; and (4) civil penalties against Verinac and Dilber, pursuant to Section 21(d)(3) of the Securities Exchange Act of 1934 ("Exchange Act").

        For the reasons stated below, the Court GRANTS the SEC's motion for (1) default judgments against Verinac and Dilber, (2) permanent injunctions against Verinac and Dilber, and (3) an award of disgorgement and prejudgment interest against Verinac in the amount of $1,904,873.48; (4) an award of disgorgement and prejudgment interest against Dilber in the

1

amount of $34,981.05.  The Court DENIES the SEC's motion for civil penalties pursuant to Section 21(d)(3), without prejudice.

I.      Factual Background

The following allegations are set forth in the SEC's Fourth Amended Complaint:

This case involves three alleged insider-trading schemes (the "Schemes"), allegedly perpetrated by a group of seventeen individuals located in the United States and Croatia.  The Schemes were orchestrated by Defendants David Pajcin ("Pajcin") and Eugene Plotkin ("Plotkin").  Verinac and Dilber, both of whom are Croatian nationals, participated in two of the Schemes:  (1) a scheme involving confidential, non-public information obtained from the "Inside Wall Street" column of Business Week magazine (the "Business Week Scheme"); and (2) a scheme involving confidential, non-public information regarding pending corporate mergers and acquisitions, obtained from an employee of Merrill Lynch & Co., Inc. ("Merrill Lynch") (the "Merrill Lynch Scheme").

A.   The Business Week Scheme

Verinac and Pajcin met in 2004.  Over the following months, Verinac suggested an insider-trading scheme to Pajcin, whereby Pajcin would arrange for the theft of copies of business magazines, prior to their publication, in order to permit Pajcin and others to obtain and trade on confidential, non-public information contained in the magazines.[1]  Verinac indicated that he had been involved previously in a similar scheme.

Following his discussions with Verinac, Pajcin hired Defendant Nikolaus Shuster ("Shuster") to steal copies of Business Week magazine prior to publication, and provide Pajcin

---

[1] Defendant Perica Lopandic also participated in these discussions, and helped develop the idea for the scheme.

2

with confidential, non-public information from Business Week's "Inside Wall Street" column.[2] Each week, Shuster stole a copy of the upcoming issue of Business Week, before it was released publicly, and informed Pajcin about the contents of the "Inside Wall Street" column.[3]

Pajcin provided Verinac with the information he obtained from Shuster. Verinac: (1) personally traded on the information, and (2) provided the information to Dilber and to Defendants Zoran Sormaz, Iilja Borac, and Antun Krsic, who also traded on it. Verinac, Dilber, Sormaz, Borac, and Krsic paid to Pajcin a portion of the profits they earned from trading on the information.

      B.  Merrill Lynch Scheme

In 2004 and 2005, Pajcin obtained confidential non-public information regarding pending mergers and acquisition transactions being handled by Merrill Lynch. Pajcin obtained this information from Defendant Stanislav Shpigelman, a Merrill Lynch employee.[4] As with the Business Week Scheme, Pajcin provided the information to Verinac, who (1) personally traded on the information, and (2) provided the information to Dilber, Borac, Sormaz, and Krsic, who also traded on it. Verinac, Dilber, Borac, Sormaz, and Krisic paid Pajcin a percentage of the profits they earned through the Merrill Lynch Scheme.

The SEC has submitted an affidavit establishing that (1) Dilber earned $25, 977.60 from trading on the insider information provided by Verinac; and (2) Borac, Sormaz, and Krisic

---

[2] Plotkin helped Pajcin carry-out the Business Week Scheme and received the information provided by Shuster.

[3] As an employee of Quad/Graphics, Inc., Shuster owed duties of trust and confidence to Quad/Grapics and the owners of Business Week, which he breached by stealing copies of the magazine and providing Pajcin and Plotkin with confidential, non-public information contained in the "Inside Wall Street" column.

[4] As a Merrill Lynch employee, Shpiegelman owed Merrill Lynch duties of trust and confidence that he breached by providing Pajcin and Plotkin with the confidential, non-public information.

earned a totally of $1,388,618.19, from their trading on the information.  The SEC has not established how much Verinac earned from his trading on the information.

## II.     Procedural History

The SEC filed this action August 2005.  Verinac and Dilber were first named in the Fourth Amended Complaint ("Complaint"), filed on August 30, 2006.  The Complaint alleges that Verinac and Dilber knowingly obtained confidential, non-public information through the Business Week and Merrill Lynch Schemes, and personally traded (and, in Verinac's case, assisted others in trading) on that information, in violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), and Section 10(b) of the Securities Exchange Act of 1932 (the "Exchange Act") and Rule 10b-5 thereunder.

Dilber was properly served with the Summons and Complaint on September 1, 2006.  Verinac was served by publication as of April 23, 2009, pursuant to the terms of an order issued by the Court on February 13, 2009.  Neither Verinac nor Dilber has responded to the Complaint; the Clerk of the Court entered Certificates of Default against both on February 16, 2010.

The SEC filed the instant motion for default judgments on July 1, 2010.  The same day, the SEC sent a copy of the default motion papers to Dilber by FedEx.  About a week later, FedEx informed the SEC that the package had been refused, and returned the package to the SEC, unopened.

## III.    Analysis

### A.  Default Judgment

A default judgment is ordinarily justified where a defendant fails to respond to the complaint.  Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984); see also Eastern Freight Ways, Inc. v. Eastern Motor Freight, Inc., No. 02 Civ. 3138, 2003 WL 21355486 (S.D.N.Y. Jun. 11,

4

2006) (granting default where plaintiff did not respond to complaint or to court order for plaintiff to have a new attorney file a notice of appearance on his behalf).

Upon a defendant's default, the court accepts as true all factual allegations in the complaint. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992) (default judgment entered on well-pleaded allegations of a complaint that established a defendant's liability).

Here, Verinac and Dilber have failed to respond to the Complaint, and to the instant motion for default judgments. Accordingly, the Court grants the SEC a default judgment against Verinac and Dilber, pursuant to FRCP 55(b). The Court deems true all factual allegations of the Complaint alleged against Verinac and Dilber. The default judgment thus establishes Verinac's and Dilber's liability for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

      B. Injunction and Damages

The SEC seeks: (1) permanent injunctions enjoining Verinac and Dilber from future violations of the securities laws; (2) an award of disgorgement and prejudgment interest against Verinac in the total amount of $1,904,873.48; (3) an award of disgorgement and prejudgment interest against Dilber in the total amount of $34,981.05; and (4) civil penalties against Verinac and Dilber pursuant to Section 21(d)(3) of the Exchange Act.

A court may award an injunction, damages, and civil penalties on a default judgment. On default, however, the court does not accept as true allegations in the complaint regarding the relief sought by the plaintiff. Au Bon Pain, 653 F.2d at 65. Rather, the plaintiff is required to prove independently that it is entitled to the relief it requests. Id. A court can make a determination regarding an injunction, damages, and penalties on the basis of the evidence

before it, including the complaints and affidavits submitted by the plaintiff, as long as the court is ensured that the evidence provides a basis for the relief requested.  See Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

The Court holds that the evidence provides a basis for: (1) permanent injunctions enjoining Verinac and Dilber from future violations of the securities laws, and (2) disgorgement and prejudgment interest against Verinac in the total amount of $1,904,873.48, and against Dilber in the total amount of $34,981.05.  The Court denies the SEC's request for civil penalties pursuant to Section 21(d)(3).

1. Permanent Injunction

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), entitle the SEC to obtain permanent injunctive relief upon a showing that:  (1) violations of the securities laws occurred; and (2) there is a reasonable likelihood that violations will occur in the future.  SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99-100 (2d Cir. 1978); SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1100-01 (2d Cir. 1972).

The evidence before the Court establishes that Verinac and Dilber violated the securities laws, and that there is a reasonable likelihood that they will commit future violations.  Thus awards of permanent injunctive relief are appropriate.

a. Violations of the Securities Laws

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 prohibit the use of manipulative or deceptive devices or contrivances in the offer or sale of securities.  Basic Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988).  In order to establish a violation of these provisions, the plaintiff must show that the defendant (1) acting with the

6

requisite scienter, (2) made material misrepresentations or omissions or engaged in a manipulative practice, such as a scheme to defraud, (3) in connection with the purchase or sale of a security, (4) by use of an instrumentality of interstate commerce.  See 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5; SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999).  Scienter need not be shown in order to establish violations of Sections 17(a)(2) and (3) of the Securities Act.  Aaron v. SEC, 446 U.S. 680, 696-97 (1980).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  Reckless conduct, i.e., conduct that "is 'highly unreasonable' and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," satisfies the scienter requirement.  Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 46-47 (2d Cir. 1978) (internal quotations omitted).  Information is considered material if there is a substantial likelihood that a reasonable investor would consider such information important in making an investment decision.  Basic, 485 U.S. at 231-232.

Acts of insider trading constitute a manipulative or deceptive device within Section 10(b) of the Exchange Act.  In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 665 n. 46 (S.D.N.Y. 2007). Tippee liability for profits derived from his own insider trading is established if a plaintiff shows that (1) the tipper possessed material non-public information concerning a publicly traded company; (2) the tipper disclosed this information to the tippee; (3) the tippee traded in the company's securities while in possession of the insider information;  (4) the tippee knew or should have known that the tipper had violated a relationship of trust by providing the non-public material information; and (5) the tippee benefited from the disclosure of the information.  S.E.C. v. Warde, 151 F.3d 42, 47 (2d Cir. 1998).

Courts construe broadly the requirement that the violative activity occur in the offer or sale, or in connection with the purchase or sale, of a security.  SEC v. Zandford, 535 U.S. 813, 819 (2002).

Here, the Complaint sets forth facts alleging each of the elements necessary to establish that Verinac and Dilber violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  For the purpose of the default judgments, the Court accepts these allegations as true.  Thus, the SEC has established that Verinac and Dilber violated the securities laws.

b.  Likelihood of Future Violations

The Second Circuit weighs various factors when considering whether there is a reasonable likelihood that a defendant will commit future violations of the securities laws, including:  (1) the egregiousness of the violation; (2) the degree of scienter involved; and (3) the isolated or repeated nature of the violations.  SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998); Commonwealth Chem. Secs., Inc., 574 F.2d at 100-01.

The Court finds that there is a reasonable likelihood that Verinac and Dilber will commit future violations of the securities laws.  First, Verinac's and Dilber's conduct was egregious.  Verinac knowingly provided insider information to Dilber, Sormaz, Borac, and Krsic, the four of whom earned over $1.5 million by trading on the information.  Dilber individually earned more than $25,000 by knowingly trading on the insider information provided by Verinac.  Second, Verinac and Dilber acted with scienter.  Verinac's direct interactions with Pajcin and Plotkin indicate that he acted with intent to commit fraud.  At a minimum, Dilber acted extremely recklessly by trading on the information provided by Verinac.  Even if Dilber was unaware of the specific origin of the information, the circumstances under which he received the information,

and the requirement that he pay a portion of his proceeds for Pajcin, should have caused him to inquire further prior to trading. Finally, Verinac and Dilber repeatedly engaged in the fraudulent conduct, by repeatedly trading on the information obtained through the Schemes and, in Verinac's case, repeatedly providing the information to others.

Accordingly, the Court grants permanent injunctions against Verinac and Dilber, enjoining them from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

### 2. Disgorgement and Prejudgment Interest

Disgorgement is an equitable remedy for violations of the federal securities laws, which is aimed at "forcing a defendant to give up the amount by which he was unjustly enriched." SEC v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987). In meeting its burden for disgorgement, the "[p]laintiff is not required to trace every dollar of proceeds . . . nor . . . required to identify misappropriated monies which have been commingled . . . ." SEC v. Great Lakes Equities Co., 775 F. Supp. 211, 214 n.22 (E.D. Mich. 1991), aff'd, 12 F.3d 214 (6th Cir. 1993). After the plaintiff makes a showing of the disgorgement figure, the burden then shifts to the defendant who must clearly demonstrate that the disgorgement figure is not a reasonable approximation. SEC v. First City Fin. Corp., 890 F.2d 1215, 1232 (D.C. Cir. 1989).

In insider trading cases, the tipper may be held jointly and severally liable for the profits obtained by his tippees. SEC v. Tome, 638 F. Supp. 596, 617 (S.D.N.Y. 1986); SEC v. Drucker, 528 F. Supp. 2d 450, 451 (S.D.N.Y. 2007). Courts are particularly willing to impose joint and several liability in cases in which the tipper collaborated with or had a close relationship with the tippees, and/or where the tippees agreed to share profits with the tipper. See S.E.C. v. Svoboda, 409 F. Supp. 2d 331, 346 (S.D.N.Y. 2006); S.E.C. v. Breed, No. 01 Civ. 7798, 2004 WL 909170

(S.D.N.Y. Apr. 29, 2004). Joint and several liability is appropriate because the rule against insider trading "would be virtually nullified if those in possession of such information, although prohibited from trading in their own accounts, were free to use the insider information on trades to benefit [others]." S.E.C. v. Warde, 151 F.3d 42, 49 (2d Cir. 1998).

A court can award prejudgment interest on the amount to awarded as disgorgement, in order to deprive the defendant of the time-value of the money. SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998). In SEC injunctive actions, prejudgment interest should be calculated by applying the Internal Revenue Service tax underpayment rate ("IRS rate"), 26 U.S.C. § 6621(a)(2). SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1476-77 (2d Cir. 1996).

### a.  Verinac

The SEC has not established how much Verinac earned from his personal trading on the insider information obtained through the Business Week and Merrill Lynch Schemes. Rather, the SEC requests that Verinac be held jointly and severally liable for the profits earned by Dilber, Sormaz, Borac, and Krsic, who traded on information provided by Verinac. The Court holds that joint and several liability is appropriate in this case because Verinac: (1) conspired with Pajcin to develop and carry-out the Business Week Scheme; (2) knowingly traded on information obtained from the Business Week Scheme and the Merrill Lynch Scheme; and (3) knowingly tipped Dilber, Sormaz, Borac, and Krsic with the information, and arranged for a portion of their profits to be paid to Pajcin.

The SEC has submitted an affidavit establishing that Dilber, Sormaz, Borac, and Krsic earned $1,414,595.79 in profits from trading on the insider information that Verinac provided them. The SEC has calculated prejudgment interest of $490,277.69 on the disgorgement amount. The SEC's affidavits provide sufficient evidence to support the awards sought.

10

Accordingly, the Court awards the SEC damages and prejudgment interest against Verinac in the total amount of $1,904,873.48.

        b.  Dilber

The SEC has submitted an affidavit showing that Dilber earned $25,977.60 by trading on the insider information provided by Verinac.  The SEC has calculated prejudgment interest of $9,003.45 on the disgorgement amount.  The SEC's affidavits provide sufficient evidence to support the award sought, which will deprive Dilber of his ill-gotten gains.  Accordingly, the Court GRANTS the SEC's request for disgorgement and prejudgment interest against Dilber in the amount of $34,981.05.

    C.  Civil Penalities

The SEC asks the Court to award civil penalties against Verinac and Dilber, pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).  The Court cannot grant civil penalties pursuant to Section 21(d)(3) in this case, however.  Section 21(d)(3) permits a court to grant civil penalties for any violation of the Exchange Act, except violations which are subject to penalties under Section 21A of the Exchange Act, 15 U.S.C. § 78u-1.  Section 21A governs civil penalties for insider trading. 15 U.S.C. § 78u-1.  Verinac and Dilber engaged in insider trading, and thus the Court can award civil penalties against them pursuant only to Section 21A.

Accordingly, the Court DENIES the SEC's motion for civil penalties, without prejudice to refile pursuant to Section 21A of the Exchange Act.

IV.    Conclusion

For the reasons set forth above, the Court GRANTS the SEC's motion for default judgments against Verinac and Dilber.  The Court awards the SEC:  (1) permanent injunctions against Verinac and Dilber; and (2) disgorgement and prejudgment interest in the total amount of

$1,904,873.48 against Verinac, and in the total amount of $34,981.05 against Dilber. The Court DENIES the SEC's motion for civil penalties, without prejudice.

     SO ORDERED.

DATED:    New York, New York
               August 11, 2010

                                                               KIMBA M. WOOD
                                                               United States District Judge