UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                                              05 CV 6991 (KMW)

                                        Plaintiff,

              - against -

SONJA ANTICEVIC, ET AL.,

                                        Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION:
(1) TO TRANSFER FUNDS ON DEPOSIT TO THE COMMISSION
TO PAY THE FEES AND EXPENSES OF THE TAX ADMINISTRATOR
AND TO REMIT THE BALANCE TO THE UNITED STATES TREASURY;
(2) TO DISCHARGE THE TAX ADMINISTRATOR UPON PAYMENT; AND
(3) TO DIRECT THAT ANY FUTURE PAYMENTS BE MADE TO THE
<u>COMMISSION TO BE REMITTED TO THE UNITED STATES TREASURY</u>**

JOHN J. GRAUBARD        (JG-4854)
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Room 400
New York, NY 10281-1022
Tel.:           212-336-0084 (Graubard)
Fax:            212-336-1353
E-mail:         graubardj@sec.gov

## INTRODUCTORY STATEMENT

The Plaintiff Securities and Exchange Commission (the "Commission") moves this Court for an Order:

1. Directing the Clerk of the Court to transfer the funds now on deposit in the Court Registry Investment System ("CRIS") account in this action the Commission;

2. Directing the Commission to pay from such funds the fees and expenses of the Tax Administrator appointed by the Court, and to report to the Court when such fees and expenses have been paid, along with any taxes which may be due;

3. Upon the filing of such report by the Commission indicating payment of the fees and expenses of the Tax Administrator, and the payment of any taxes which may be due, discharging the Tax Administrator;

4. Directing the Commission to remit any remaining funds to the United States Treasury;

5. Directing that any future payments made on the judgments entered in this action be made to the Commission, rather than deposited with the Clerk in the CRIS account, and further directing that the Commission remit such payments to the United States Treasury; and

6. Granting such other and further relief as may appear just and proper.

<u>**STATEMENT OF RELEVANT FACTS**</u>

The Commission filed its initial complaint on August 5, 2005.  Declaration of John J. Graubard ("Graubard Decl.") ¶ 4; (Dkt. No. 1.)  This case involved a widespread international scheme of serial insider trading by the Defendants, including illegal trading in options and common stock of a host of companies in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  *Id.*  In total, the defendants obtained profits from these trades of more than $6 million.  *Id.*  "In total, therefore, Pajcin and the other Defendants who traded on the basis of confidential, non-public information provided through the Schemes earned a total of approximately $6,897,611.95."  *SEC v. Anticevic*, 2010 WL 2077196 at *2 (May 14, 2010) (Dkt. No. 190).

The Commission subsequently filed further Amended Complaints in this action (Dkt. Nos. 22, 75, 80, and 91).  Graubard Decl. ¶ 5.

The Commission has obtained judgments for disgorgement, prejudgment interest, and/or civil penalties against the following defendants in this action:

      a.    Elvis Santana, entered on May 29, 2008 for disgorgement of $475,151.79 and prejudgment interest of $23,172.26 (Dkt. No. 120);

      b.    Monika Vujovic, entered on March 26, 2009  for disgorgement of $261,364.12 (Dkt. No. 150);

      c.    David Pajcin, entered on June 7, 2010 for disgorgement and prejudgment interest of $7,719,494.89, and a civil penalty of $20,046,334.17 (Dkt. Nos. 190-191);

d.      Anton Dilber, entered on August 16, 2010 for disgorgement and
        prejudgment interest of $34,981.05 (Dkt. No. 201);

e.      Bruno Verinac, entered on August 16, 2010 for disgorgement and
        prejudgment interest of $1,904,873.48 (Dkt. No. 201);

f.      Sonja Antecivic, entered on August 31, 2010 for disgorgement of
        $2,056,055.12 and prejudgment interest of $772,263.03 (Dkt. No. 206);

g.      Antun Dilber, entered on May 27, 2011 for a civil penalty of $51,955.20
        (Dkt. Nos. 201, 216);

h.      Bruno Verinac, entered on May 27, 2011 for a civil penalty of
        $2,829,191.58 (Dkt. Nos. 201, 216);

i.      Henry Siegel, entered on May 16, 2012 for disgorgement of $1,270,312.36
        (Dkt. No. 226);

j.      Perica Lopandic, entered on June 20, 2012 for disgorgement of
        $735,192.80 (Dkt. No. 227);

k.      Zoran Sormaz, entered on June 20, 2012  for disgorgement of $524,375.75
        (Dkt. No. 228);

l.      Ilija Borac, entered on June 20, 2012 for disgorgement of $835,908.15
        (Dkt. No. 229);

m.      Anton Krsic, entered on June 20, 2012 for disgorgement of $29,334.29
        (Dkt. No. 230); and

n.      Mikhail Plotkin, entered on October 22, 2012 for disgorgement of $25,000
        (Dkt. No. 238).

Graubard Decl. ¶ 6.  These judgments required the defendants to pay the disgorgement and

prejudgment interest to the CRIS account, to be held pending further order of the Court.[1]  *Id.*

Judgments for civil penalties called for these amounts to be paid to the Commission.  *Id.*

The following amounts were received in the CRIS account:

| Date | Amount |
|------|-------:|
| October 31, 2007 | $7,980.00 |
| June 12, 2008 | $4,824.36 |
| June 17, 2008 | $498,324.05 |
| April 15, 2009 | $261,364.12 |
| December 23, 201 | $2,828,318.18 |
| June 20, 2012 | $455,957.26 |
| November 14, 2012 | $735,192.80 |
| November 14, 2012 | $524,375.75 |
| November 14, 2012 | $835,908.15 |
| November 14, 2012 | $12,500.00 |
| December 12, 2012 | $12,500.00 |
| December 5, 2013 | $28,246.93 |
| December 12, 2013 | $150.00 |
| **TOTAL** | **$6,205,641.60** |

Graubard Decl. ¶ 7.  The Financial Officer shows a balance of $6,205,338.60 in the CRIS

account, which amount reflects payments made to the Tax Administrator.  Graubard Decl. ¶ 8.

The Court appointed Damasco and Associates as Tax Administrator on August 31, 2009

(Dkt. No. 172).  Graubard Decl. ¶ 10.

## ARGUMENT

## I.   A Distribution to Injured Investors Is Not Practicable

Distribution of the collected disgorgement to injured investors is not practicable in this

case, because the Commission cannot practically identify the counterparties to the fraudulent

---

[1] The Court waived or did not order disgorgement as to defendants Eugene Plotkin (Dkt. No. 117), Jason C. Smith (Dkt. No. 118), Nickolaus Shuster (Dkt. No. 149), and Juan C. Renteria, Jr. (Dkt. No. 148).

trades and for other reasons discussed below.  Thus, the Commission respectfully requests that the Court order the funds in the CRIS account paid to the Treasury.

As the Second Circuit clearly held earlier this year, the primary goals of a disgorgement order are to deprive the wrongdoers of their illicit gains and thereby to deter fraud:

> Disgorgement . . . operates to make the illicit action unprofitable for the wrongdoer, disgorgement need not serve to compensate the victim of the wrongdoing. . . .  Because disgorgement's underlying purpose is to make lawbreaking unprofitable for the law-breaker, it satisfies its design when the lawbreaker returns the fruits of his misdeeds, regardless of any other ends it may or may not accomplish.

*SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014).[2]

Although the compensation of victims of the fraud is a "secondary goal," *Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006), "it remains within the court's discretion to determine how and to whom the money will be distributed." *Fischbach Corp.*, 133 F.3d at 175.  If the disgorged funds are not paid to the injured parties, "they will be paid to the United States Treasury . . . ."  *Official Committee*, 467 F.3d at 81.  Thus, "a regulatory agency seeking disgorgement need not identify specific victims to whom payment is due 'in good conscience'" *FTC v. Bronson Partners*, 654 F.3d 359, 372-73 (2d Cir. 2011).  Indeed, as the Second Circuit noted, "in some securities enforcement cases, the nature of the harm is so diffuse that the specific identities of the victims would be nearly impossible to ascertain and the quantum of their individual entitlements too minimal to compute."  *Id.* at 373.

---

[2] That the enrichment of the defendant, and not the loss to the injured parties, is the appropriate measure of disgorgement was made clear recently by Judge Forrest in *SEC v. Tourre*, ___ F. Supp.2d ___, 2014 WL 969442 at *6 (S.D.N.Y. Mar. 12, 2014), and by Judge Karas in *SEC v. Bronson*, ___ F. Supp.2d ___, 2014 WL 1613020 at *12 (S.D.N.Y. Mar. 31, 2014).

Moreover, the Commission is not obligated to seek distribution even where it is conceivable that some victims could be identified:

> Nor, having obtained a disgorgement award, are public entities required to make any particular efforts to compensate the victims they *can* identify. . . . While agencies may, as a matter of grace, attempt to return as much of the disgorgement proceeds as possible, the remedy is not, strictly speaking, restitutionary at all, in that the award runs in favor of the Treasury, not the victims.

*Id.* (emphasis in original).  For example, as other courts have recognized a distribution in an insider trading case, especially one occurring years after the illegal actions, is impracticable. *SEC v. Grossman*, 2003 WL 133237 at * 6-7 (S.D.N.Y. Jan. 13, 2003); *See*, *SEC v. Bhagat*, 2008 WL 4890890 at *2 (N.D. Cal. 2008); *SEC v. Andes*, 1986 WL 1212 at *3 (E.D. Pa. Jan 23, 1986).  So it is here.

**A.     _The Equity Trades_**

As shown by the exhibits attached to the Declaration of Melissa Coppola (Dkt. No. 168), trades in stocks occurred about nine years ago in a large number of securities, including such widely traded issues as Cinergy Corp. (CIN), IMAX Corp. (IMAX), Reebok International Ltd. (RBK), Spectrum Pharmaceuticals (SPPI), and Symbol Technologies, Inc. (SBL).  Securities trades ordinarily occur between an investor and a "market maker" rather than between two investors directly.  *See*, https://www.sec.gov/answers/mktmaker.htm (last accessed June 2, 2014) (setting forth the role of the market makers in the present-day securities markets.  The individual victims of insider trading in equity securities are therefore difficult, if not impossible, to identify, as recognized by the United States Sentencing Guidelines in § 2B1.4(b), which states that in insider trading cases "the victims and their losses are difficult if not impossible to identify . . . ."

There is, therefore, no way to discover the individual investors who were on the counterparties to the equity transactions in this case.  There is similarly no way to determine whether if these equity investors had other reasons to buy or sell securities.  Indeed, distributing the disgorgement attributable to each individual security to those who traded in that security on the dates in question may well result in minimal amounts being paid to each investor.[3]

**B.**     ***The Option Trades***

For the option trading the Defendants engaged in there is a specific counterparty for each transaction.  At this time, however, it is not practicable to determine the identity and the current address of that counterparty in transactions that occurred nearly a decade ago, in 2004 and 2005.  For example, many of the option traders may have been entities that did not survive the financial crisis that began in 2008.Moreover, as with the equity trades, there is no way to know whether the counterparties had other reasons to buy or sell options than the apparent market price.  Thus, a distribution might be a "windfall" to a counterparty.

---

[3] The following table shows the ratio between the Defendants' purchases in three equities and the total number of shares traded on the relevant dates:

| Security | Date | Defendants' Trades | All Trades | Percentage of Defendants' Trades |
|---|---|---|---|---|
| Gillette (G) | 1/27/05 | 13,719 shares | 4,087,300 shares | 0.33% |
| Reebok (RBK) | 8/1/05 and 8/2/05 | 8,000 shares | 2,733,300 shares | 0.29% |
| Federal Express (FDX) | 6/16/05 | 2,200 shares | 1,647,300 shares | 0.34% |

Clearly, a distribution of the Defendant's profits from these trades would not provide any meaningful return to those who sold their securities.

The Court, therefore, should order that the funds now on deposit in the CRIS account be transferred to the Commission, and remitted by the Commission to the Treasury.

## II.   <u>The Tax Administrator Should Be Discharged and Future Payments Directed to the Commission</u>

As no distribution should be made to injured investors for the reason explained above, the Tax Administrator's services will not be required once a final tax return is filed.  *Id.*  The Commission will undertake to pay all outstanding fees and expenses of the Tax Administrator, and any tax obligations which may be due, from the transferred funds, and then to notify the Court that has been done.  *Id.*  Following payment to the Tax Administrator, the Court should discharge the Tax Administrator.[4]  *Id.*

Following payments to the Tax Administrator, and payment of any tax obligations, the Court should, therefore, order that the funds now on deposit in the CRIS account be transferred to the Commission should be remitted to the United States Treasury.  Graubard Decl. ¶ 11.  To the extent that there are unsatisfied judgments in this action, the Court should order that any future payments be made to the Commission, to be remitted to the United States Treasury.  Graubard Decl. ¶ 12

---

[4] The proposed Order provides that before remitting the funds to the Treasury, the Commission will from those funds pay any taxes due and the fees and expenses of the Tax Administrator.  The proposed Order further provides that upon the Commission certifying that such taxes, fees, and expenses having been paid, the Tax Administrator will be discharged.

## **CONCLUSION**

For the reasons set forth above, the Court should grant the relief sought by the

Commission.

Dated:         New York, New York
               June 5, 2014


                                        /s/      John J. Graubard
                                        JOHN J. GRAUBARD          (JG-4854)
                                        Securities and Exchange Commission
                                        New York Regional Office
                                        200 Vesey Street, Room 400
                                        New York, NY 10281-1022
                                        Tel.:          212-336-0084 (Graubard)
                                        Fax:           212-336-1353
                                        E-mail:        graubardj@sec.gov